UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Plaintiff,
  - against -                             **MEMORANDUM & ORDER**
                                                    04-CV-5045 (ILG) (KAM)

CPT MEDICAL SERVICES, INC., et al.,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MATSUMOTO, United States Magistrate Judge:

        The Court has reviewed the letters (docket nos. 68, 72, and 77) submitted by plaintiff and defendants CPT Medical Services, P.C. ("CPT"), Hoss Medical, Services, P.C. ("Hoss"), and Huseyin Tuncel, M.D. ("Tuncel") (collectively the "Tuncel defendants"), regarding plaintiff's request that the Court "strike those portions of Tuncel's interrogatory answers that reserve his right to provide answers in the future and enter an order precluding [Tuncel] from offering information in the future as to those matters about which he has asserted the 5th Amendment . . . ." Docket no. 68, Letter from Jonathan Marks, Esq. dated August 26, 2005 ("Marks Letter"), at 2[1]. For the reasons set forth below, plaintiff's request to strike is granted and its request to preclude is denied without prejudice.

---

[1] Plaintiff's August 26, 2005 submission states that corporate defendants CPT and Hoss concede that they cannot invoke the Fifth Amendment privilege against self-incrimination and will provide separate answers to plaintiff's First Set of Interrogatories.

-1-

## BACKGROUND

On or about March 3, 2005, plaintiff served its First Set of Interrogatories on CPT, Hoss and Tuncel. Those defendants, including Tuncel, did not invoke the Fifth Amendment in their first responses on April 21, 2005, but instead provided responses, verified by Tuncel, asserting objections, providing written responses and/or referring to documents that were produced in lieu of a written response, as permitted by Fed. R. Civ. P. 33(d). The Tuncel defendants' discovery responses are annexed to plaintiff's May 6, 2005 motion to compel, docket no. 31.

On May 17, 2005, the Tuncel defendants moved, pursuant to Fed. R. Civ. P. 26(c), to stay all discovery in the instant matter due to the currently pending criminal matter before the Supreme Court of New York, County of Queens ("Queens County criminal action"), against Tuncel and others who are not parties to the instant civil action. See docket no. 47. In support of the motion to stay, the Tuncel defendants submitted a copy of the indictment and stated generally, that the Queens County criminal action overlapped with the issues presented in

the instant federal action.[2] Based upon Tuncel's failure to establish grounds for a stay, this Court denied that request, but ordered plaintiff not to seek discovery from Tuncel about his pending criminal case. See docket no. 51, Minute Entry and Order dated May 26, 2005, at 1-3, *aff'd in relevant part*, State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 157-58 (E.D.N.Y. 2005).

In seeking review of the May 26, 2005 Order denying the stay and compelling discovery, Tuncel's counsel submitted for the first time an affirmation from Tuncel's defense counsel in the Queens County criminal action, stating that the criminal indictment against Tuncel "involves allegations of false statements, insurance fraud and conspiracy relating to the billing of State Farm Insurance, in connenction with testing performed on patients receiving benenfits under New York no-fault law." Docket no. 54, Ex. A, Affirmation of Kenneth Kaplan, Esq. Contesting Minute Entry and Order of Magistrate Judge Kiyo Matsumoto of May 26, 2005,

---

[2] In support of their motion for a stay, the Tuncel defendants' counsel argued that because "Tuncel is intertwined in a criminal indictment presently being prosecuted, his Constitutional rights are potentially affected and he should not be forced to defend the instant [civil] action . . . ." Docket no. 47, Memorandum of Law of [Tuncel] Defendants in Support of Motion to Stay ("MOL in Support of Stay"), at 5. Tuncel's counsel also stated that "all of th[e] allegations [in plaintiff's Complaint] . . . concerning facts and circumstances . . . are *the same or similar* to those in the Criminal Indictment" which names, among others, defendant Tuncel. Id. at 3 (emphasis added).

To this end, the First Count of the Indictment charges that Tuncel and others "knowing presented, caused to be presented, or prepared to be presented, a written statement to State Farm Insurance Company as part or in support of a claim for payment . . . pursuant to an insurance policy[.]" Docket no. 39, Ex. 1. The Second Count charges that "on or about and between January 15, 2003, and November 20, 2003," Tuncel and others "made or caused a false entry in the business records of State Farm Insurance Company[.]" Id. The Third Count charges Tuncel and others with Conspiracy in the Fifth Degree, the subject crimes of that conspiracy being the acts described in the First and Second Counts and the overt act described as preparation of "documents including reports containing false information to be submitted in support of and part of their medical billing submitted to State Farm Insurance Company[.]" Id.

Pursuant to Fed. R. Civ. P. 72 ("Kaplan Aff."), at ¶ 4. No other information has been provided regarding the specific allegations in the criminal case. Tuncel's criminal defense counsel further states that he has advised Tuncel to assert his Fifth Amendment privilege against self-incrimination in the instant federal civil case while the criminal indictment is pending, because Tuncel's testimony in the instant action "would substantially implicate his Constitutional rights[.]" Id. at ¶¶ 8, 9. Judge Glasser issued an order on June 28, 2005, which, *inter alia*, upheld the denial of the Tuncel defendants' motion for a stay.

Thereafter, on August 11, 2005, the Tuncel defendants submitted a second, revised response to plaintiff's First Set of Interrogatories, for the first time invoking the Fifth Amendment and reserving the right to answer the plaintiff's interrogatories at a later date. Tuncel responded to each interrogatory as follows:

> On the advice of counsel, I respectfully decline to answer under my 5th Amendment rights pursuant to the United States Constitution. *I reserve the right to answer this and other questions at a later date considering my impending trial*.

Marks Letter, Ex. A (emphasis added).

As previously noted, plaintiff seeks an order striking that portion of Tuncel's responses to its First Set of Interrogatories reserving his right to provide responses to the interrogatories "and other questions" at a later date, and precluding Tuncel from testifying regarding matters concerning which he invoked the Fifth Amendment. In opposition to plaintiff's motion, Tuncel's counsel now retreats from his earlier assertion that the "facts and circumstances" of the instant civil action are "intertwined" and "are the same or similar" to the criminal proceeding in Queens County (MOL in Support of Stay at 3), and states that Tuncel "is facing a criminal trial that *may* involve similar issues to those that are being raised in the instant

case." Docket no. 72, Letter from Bruce Rosenberg, Esq. dated September 9, 2005 ("Rosenberg Letter") (emphasis added). Defense counsel asserts that Tuncel's criminal trial is scheduled to commence on November 2, 2005 and last through the end of November 2005. See id.

Plaintiff contends that in light of this Court's denial of the Tuncel defendants' motion for a stay of discovery, and the ruling by Judge Glasser upholding the denial of the stay of discovery, Tuncel's revised responses to plaintiff's interrogatories amount to an "end-run" around the rulings of both Judge Glasser and the undersigned. Plaintiff further contends that "Tuncel is attempting to both assert the 5th Amendment as a basis for refusing to answer and avoid the consequences of such assertion by suggesting that he might answer later." Marks Letter at 2. Tuncel argues that because the Tuncel defendants have produced voluminous paper discovery, the majority of which has yet to be reviewed by plaintiff, and in light of Tuncel's impending criminal trial date, he should be permitted to supplement his interrogatory responses in the future to avoid prejudice to him in this and in his criminal case. See Rosenberg Letter at 1-2. Tuncel suggests that any prejudice to plaintiff in denying its instant request would be outweighed by the prejudice to him if plaintiff's motion were granted. Id.

## DISCUSSION

Plaintiff relies on Sec. & Exch. Comm'n. v. Cymaticolor Corp., 106 F.R.D. 545 (S.D.N.Y. 1985), for the proposition that a court may properly preclude a party from offering into evidence "any matter relating to the factual bases for his denials and defenses as to which he has asserted his fifth amendment rights." 106 F.R.D. at 549; Marks Letter at 2. In Cymaticolor, the individual defendant declined to answer a number of interrogatories based on his Fifth

Amendment privilege against self-incrimination and, as here, included in his interrogatory responses a reservation of his right to withdraw the asserted privilege at a later time and answer the interrogatories. The Securities and Exchange Commission ("SEC") sought, *inter alia*, an order compelling the defendant to decide at that time whether he would invoke or waive his Fifth Amendment privilege and precluding the individual defendant from offering into evidence any information at trial regarding which he had invoked the Fifth Amendment.

The individual defendant in Cymaticolor who was the subject of the SEC's motion to preclude objected to, among other things, the scope of the preclusion order requested and the timing of the SEC's request. Specifically, the individual defendant argued that the preclusion order be limited to evidence that the SEC had not obtained from other sources. The defendant further contended that he be permitted to wait until the later of thirty days prior to the close of discovery or ninety days prior to trial to make his decision regarding the assertion of the privilege. See Cymaticolor, 106 F.R.D. at 550.

The Cymaticolor court granted the SEC's motion for a total preclusion order preventing the defendant from offering into evidence any matter relating to the factual bases for his denials and defenses as to which he asserted his Fifth Amendment privilege. The Court rejected defendant's proposal for a more limited preclusion order, noting that it would undermine a fundamental purpose of discovery, that is, the opposing party's ability to ascertain the position of the adverse party. In response to defendant's contention that a total preclusion order would render defendant's assertion of his constitutional privilege "too costly," the Cymaticolor court reasoned that although a total preclusion order would subject the defendant to the risk of losing the case on the merits without the use of the evidence, the Fifth Amendment did not prohibit this

resulting "cost" to the defendant. Id. at 549-550.

With respect to the timing issue, the Cymaticolor court rejected defendant's argument that he did not wish to decide whether to assert or waive his privilege "without fully knowing the extent of either the SEC's case against him or the existence of other exculpatory evidence," because, as here, the action had been pending for approximately one year, and defendant had "an abundant opportunity to apprise himself of the basis of the SEC's case." Id. at 550. The court found unacceptable the delay inherent in defendant's proposal because it would affect the entire discovery process, given that discovery obtained regarding the defendant's denials and defenses would "have a definite impact on the course of the SEC's discovery and should be obtained at the outset of discovery. It is likely that the SEC will pursue different avenues of discovery depending on [defendant's] decision." Id. The court ordered that the individual defendant would have to decide within ten days whether to assert the privilege, or face preclusion.

In opposing plaintiff's motion to preclude and strike, Tuncel relies on the Second Circuit's admonition in United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78 (2d Cir. 1995) that:

> [T]hose who invoke the Fifth Amendment and those who oppose them. . . should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, . . . courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege.

Id. at 83-84 (footnote and citation omitted). There, the Second Circuit cautioned that "[t]he tension between self-incrimination concerns and the desire to testify may be especially acute for a

claimant in a civil forfeiture proceeding," because the claimant must prove either that the defendant property was not used unlawfully or was derived from the proceeds of criminal activity, or he must establish an "innocent owner defense." Id. at 83. The Second Circuit recognized that the claimant is often subject to criminal prosecution based on the same alleged illegal behavior that supports the seizure and, consequently, faces the dilemma of remaining silent and allowing the forfeiture or testifying against the forfeitability and risking exposure to incriminating admissions. Id. Based upon the foregoing considerations, the Second Circuit in 4003-4005 5th Ave. counseled that in forfeiture cases, courts should attempt to further the goal of presenting as much testimony as possible in the civil litigation, despite the assertion of the privilege, by finding means that strike a fair balance and accommodate both parties' interests. Thus, when deciding whether a party should be permitted to withdraw a previously invoked Fifth Amendment privilege, courts should consider the following factors: (i) the nature of the proceeding, (ii) how and when the privilege was invoked, and (iii) the potential for harm or prejudice to the opposing parties. Id. at 84-85 (citation omitted).

In 4003-4005 5th Ave., the Second Circuit focused on the unique nature of a civil forfeiture action which often arises from the same factual nucleus as a related criminal prosecution. Thus, the Second Circuit's rationale in 4003-4005 5th Ave. is of questionable applicability in this federal action asserting claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq*., and common law claims of fraud and unjust enrichment.

Notwithstanding the fundamental distinction between a forfeiture action and this action, and although at this time Tuncel does not seek to withdraw his invocation of the Fifth

Amendment, an analysis of the above factors in the context of this case in its current posture should assist the parties with evaluating and deciding an appropriate course of action. Considering the first factor articulated in the 4003-4005 5th Ave. decision, the nature of the action, the Court notes that defendant Tuncel has not, to date, revealed the specific acts charged in the Queens County criminal action or otherwise established that the tensions and dilemmas confronting a forfeiture claimant, as discussed in the 4003-4005 5th Ave. case, are present in this federal RICO and fraud action brought by a private, as opposed to government, entity. Tuncel's criminal defense attorney merely states in his affirmation that the Queens County criminal case "involves allegations of false statements, insurance fraud and conspiracy relating to the billing of State Farm Insurance, in connection with testing performed on patients receiving benefits under New York no-fault law." Kaplan Aff. ¶ 4. Thus, if the criminal and civil action were predicated on the same acts by the Tuncel defendants, Tuncel's later withdrawal of his Fifth Amendment invocation is more likely to be found to be in good faith, rather than to abuse, manipulate or gain any unfair strategic advantage. See 4003-4005 5th Ave., 55 F.3d at 84 (citing Sec. & Exch. Comm'n v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d cir. 1994) (discussing "the potential for exploitation" through abusive assertions of the Fifth Amendment in civil actions)).

Considering the second factor, how and when the privilege was invoked, the Court noted in its May 26, 2005 Order that the Tuncel defendants had responded to the plaintiff's First Set of Interrogatories and document requests in April 2005, without ever invoking the Fifth Amendment. See docket no. 31, Letter from Jonathan Marks, Esq. dated May 6, 2005, Ex. A. Consequently, the Tuncel defendants arguably waived their privilege. See United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 317 (2d Cir. 1979) ("A witness who fails to invoke

the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter.") (citing Rogers v. United States, 340 U.S. 367, 370-71 (1951) (when a witness makes voluntary statements on a subject, he may waive subsequent claim of the privilege with respect to that subject); In re Donald Sheldon & Co., Inc., 93 F. Supp. 2d 503, 505 (S.D.N.Y. 2000) (quoting O'Henry's Film Works, Inc. with approval). It was only after Judge Glasser's decision upholding that part of this Court's May 26, 2005 Order denying the stay and ordering that the Tuncel defendants respond to discovery, that the Tuncel defendants invoked for the first time the Fifth Amendment in August 2005 (see Marks Letter, Ex. A), over eight months after the case was commenced, and five months after the plaintiff first served its interrogatories on the Tuncel defendants. As a result, plaintiff has been thwarted in obtaining even basic interrogatory answers from Tuncel, eleven months after the action was commenced. Tuncel's reservation of his right to withdraw his assertion of the privilege at an unspecified later date will only prolong and delay the conclusion of discovery in this action.

Considering the third factor, the potential for harm or prejudice to the opposing party, this Court previously determined, in considering Tuncel's motion to stay discovery, that both plaintiff and the public were likely to suffer prejudice if discovery were stayed because Tuncel allegedly played a central role in the acts giving rise to this civil action. See May 26, 2005 Order, at 2. Here, Tuncel's invocation of the Fifth Amendment will preclude the plaintiffs, and indeed the other defendants, from obtaining discovery relevant to the claims and defenses asserted in this action. Tuncel's reservation of his right to later withdraw the privilege should not again require the Court to consider whether the opposing party will suffer or has suffered

prejudice.  See 4003-4005 5th Ave., 55 F.3d at 82 (invocation of the privilege necessarily results in a disadvantage to opposing parties by "keep[ing] them from obtaining information they could otherwise get.") (citing Graystone Nash, 25 F.3d at 190); United States v. Private Sanitation Indus. Ass'n, 811 F. Supp. 808, 812 (E.D.N.Y. 1992), *aff'd,* 995 F.2d 375 (2d Cir. 1993).  If Tuncel later seeks to withdraw his assertion of the privilege, the Court may examine whether the opposing party also has been unfairly surprised.

Considering the above three factors, and the reasoning of the court in the Cymaticolor case, the Court agrees with plaintiff's assertion that Tuncel's responses "amoun[t] to an end-run around prior Court rulings that denied a stay of discovery pending resolution of the criminal prosecution."  Docket no. 77, Letter from Jay Shapiro, Esq. dated September 16, 2005 ("Shapiro Letter"), at 1.  At this time, however, Tuncel does not seek to withdraw his invocation of the Fifth Amendment, but instead seeks to retain the ability to withdraw the invocation, presumably unilaterally, without leave of court, after his criminal trial is concluded.  Without the ability to waive his Fifth Amendment privilege, Tuncel faces the prospect not only of a preclusion order, but also the prospect that an adverse inference may be drawn against him on matters to which he has invoked his privilege, a result not forbidden by the Fifth Amendment.  See Mitchell v. United States, 526 U.S. 314, 327 (1999) ("This Court has recognized 'the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'") (quoting Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)); see also Cymaticolor, 106 F.R.D. at 550.

Accordingly, the Court grants plaintiff's motion to strike those portions of

Tuncel's interrogatory responses that state *"I reserve the right to answer this and other questions at a later date considering my impending trial."* Tuncel must seek leave of Court if he later seeks to withdraw his invocation of the privilege at which time his application will be considered pursuant to the factors articulated above in the 4003-4005 5th Ave. decision. While Tuncel may later seek to withdraw his invocation of the Fifth Amendment, the Court may well deny that application because withdrawal of the privilege should not be permitted "carelessly[,]" and courts should be "alert to the danger that the litigant might have invoked the right primarily to abuse, manipulate or gain an unfair advantage over opposing parties." 4003-4005 5th Ave., 55 F.3d at 84.

        The Court denies without prejudice plaintiff's request to preclude Tuncel from offering information in the future as to those matters about which he has asserted the Fifth Amendment. The parameters of a preclusion order, if any, are better suited for determination by the trial judge. Tuncel is advised, however, that this Court or the District Court may not only deny Tuncel's request to withdraw in Fifth Amendment privilege, but may also later preclude Tuncel from offering information about "matters previously hidden from discovery through an invocation of the right" if, based on the record before it at that time, it is found that Tuncel invoked the Fifth Amendment privilege in a manipulative or abusive manner, to gain an unfair advantage, and/or if plaintiff is found to have been prejudiced or surprised. See id. at 85 (citations omitted); United States v. Snyder, 233 F. Supp. 2d 293, 300 (D. Conn. 2002) (court left open the possibility of withdrawal of the invocation of the Fifth Amendment, suggesting that the motion to preclude may be revisited); Cf. Sec. & Exch. Comm'n. v. Cassano, No. 99 Civ. 3822, 2000 WL 777930, at *1 (S.D.N.Y. June 19, 2000) (following the close of discovery, court

granted motion to preclude, finding that Fifth Amendment privilege was invoked "in part by a desire to seek to gain the benefit of surprising" the opposing party); Savalle v. Kobyluck, No. 00 Civ. 675, 2001 WL 1571381, at *3 (D. Conn. Aug. 15, 2001).

Moreover, this Order should not be construed as permitting CPT Medical Services, P.C. and Hoss Medical, Services, P.C. to avoid their discovery obligations, even though Tuncel may be called upon to respond to discovery on behalf of CPT and Hoss, as a representative of these incorporated entities. It is well-settled that "a corporation itself possesses no [F]ifth [A]mendment privilege." United States v. Barth, 745 F.2d 184, 189 (2d Cir. 1984) (citing Curcio v. United States, 354 U.S. 118, 122 (1957)); In re Two Grand Jury Subpoenae Duces Tecum, 769 F.2d 52, 56 (2d Cir. 1985) ("a corporate representative or agent cannot claim a [F]ifth [A]mendment privilege against producing corporate documents, regardless of whether they contain information incriminating him or were written by him, and regardless of whether the corporation is large or small.") (citations omitted); Cf. United States v. Doe, 465 U.S. 605 (1984) (addressing difference between Fifth Amendment law as it applies to corporations and as it applies to unincorporated sole proprietorships).

The Court notes that if CPT and/or Hoss are requested to produce a witness to testify about their corporate records, they must "make every reasonable effort" to comply. See Barth, 745 F.2d at 189 (citation omitted). This may mean that the corporate entity "may be required to supply a new agent should all existing employees refuse to testify on self-incrimination grounds." Id. (citation omitted); In re Two Grand Jury Subpoenae, 769 F.2d at 57.

## CONCLUSION

For the foregoing reasons, plaintiff's request to "strike those portions of Tuncel's interrogatory answers that reserve his right to provide answers in the future and enter an order precluding [Tuncel] from offering information in the future as to those matters about which he has asserted the 5th Amendment" is granted in part and denied in part without prejudice. The Court grants plaintiff's motion to strike those portions of Tuncel's interrogatory responses that state *"I reserve the right to answer this and other questions at a later date considering my impending trial."* Should Tuncel later elect to withdraw his invocation of the privilege, he must seek leave of the Court. The Court denies without prejudice plaintiff's motion for an order precluding Tuncel from offering information in the future as to those matters about which he has asserted the Fifth Amendment.

**SO ORDERED.**
Dated: October 24, 2005
⠀⠀⠀⠀Brooklyn, New York

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀/s/
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀KIYO A. MATSUMOTO
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀United States Magistrate Judge