UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 0 5 2008 ★

**BROOKLYN OFFICE**

-------------------------------------------------x

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,

    -against-

CPT MEDICAL SERVICES, P.C., *et al.*,

                Defendants.

<u>MEMORANDUM AND ORDER</u>
04 CV 5045 (ILG)

-------------------------------------------------x

GLASSER, United States Senior District Judge:

## **INTRODUCTION**

On October 22, 2007, Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm" or "Plaintiff"), a nationwide automobile insurer, filed its Amended Complaint against forty-seven defendants, alleging that it was defrauded when fraudulently licensed medical corporations performed medically unnecessary diagnostic current perception threshold tests ("CPT tests") on patients covered by State Farm insurance, and then submitted claims for reimbursement to State Farm with fraudulent documentation purporting to support the medical necessity of those tests. The linchpin of Plaintiff's allegations is that the defendants conspired to abuse New York's No-Fault laws, N.Y. Ins. Law § 5101 *et seq.*, and the regulations promulgated pursuant to those laws, 11 N.Y.C.R.R. § 65 *et seq.* (collectively, the "No-Fault Laws"), to obtain payment for services and diagnostic tests that were not medically necessary. State Farm seeks damages for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), common law fraud, and unjust

1

enrichment for claims it already paid, as well as a declaratory judgment pursuant to 28 U.S.C. § 2201 against any defendant that continues to submit fraudulent claims. Defendants CPT Medical Services, P.C., Hoss Medical Services, P.C., Huseyin Tuncel, M.D. ("Dr. Tuncel"), Channel Chiropractic, P.C., a/k/a Channel Diagnostics, East-Way Chiropractic, P.C., Andrew Susi, D.C. ("Dr. Susi"), Richard's Medical Management, Corp., Weinstein Healthcare Management, Inc., Richard Weinstein, Mark Slamowitz, D.C. ("Dr. Slamowitz"), Peter Curcio, Richard Lee, Multi Medical Management, Inc. ("Multi Medical"), Michael Dante Management, Inc. ("Michael Dante Management"), Bozena Augustyniak, M.D. ("Dr. Augustyniak"), Bronxborough Medical & Wellness, P.C. ("Bronxborough"), Boris Zak, and Summit Management Corp. ("Summit") move to dismiss counts one through twelve and fourteen and fifteen in Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **BACKGROUND**

The facts as set forth below are drawn from the complaint, the allegations of which the Court accepts as true solely for purposes of this motion to dismiss.

Pursuant to the No-Fault Laws, State Farm is required to provide benefits to insured persons (the "insureds") for medically necessary diagnostic tests. The insureds in turn may assign their rights to such benefits to their medical providers in order to reimburse them for services rendered. See 11 N.Y.C.R.R. § 65-3.11. Healthcare providers then submit the claims to State Farm for reimbursement. Id. State Farm is required to pay claims submitted to it within thirty days or else such claims are subject to a two percent interest rate. Id. § 65-3.9(a).

Beginning around 1998, State Farm began receiving claims from four medical

2

corporations to be reimbursed for CPT tests purportedly performed by defendants Drs. Tuncel and Susi to diagnose injuries arising from automobile accidents. Am. Compl. ¶ 4. Dr. Tuncel is licensed by the state to run two of these medical corporations, CPT Medical Services, P.C. and Hoss Medical Services, P.C., (collectively, the "CPT Medical Defendants"). Id. ¶¶ 2, 15. Dr. Susi is licensed by the state to run the other two, Channel Chiropractic, P.C., a/k/a Channel Diagnostics, and East-Way Chiropractic, P.C. (collectively, the "Susi Entities"). Id. ¶¶ 2, 16. State Farm reimbursed these medical corporations for the claims they submitted within the statutory period of thirty days as required by the No-Fault laws. It filed this action because it believes that CPT tests have no medical value, and that their sole purpose was to generate fees and revenue for the defendants.

There were two levels of fraud involved in the defendants' alleged scheme.

## A. Level 1: Fraudulent Billing Practices

The first part of defendants' scheme involved the submission of fraudulent documentation to State Farm. State Farm alleges that Drs. Tuncel and Susi performed CPT tests on patients referred to them by outside providers. Id. ¶¶ 9-10. Kickbacks were paid to management companies and the persons who ran those companies to obtain referrals from physicians treating automobile accident victims, described in more detail below. Id. With knowledge that these tests had no diagnostic value, the referring physicians, including, amongst others, defendants Drs. Augustyniak, Brutus, and Slamowitz (collectively, the "referring physicians"), either drafted almost identical letters of medical necessity to support the referrals or allowed their signature stamp to be used on such letters. Id.

3

The CPT Medical Defendants and the Susi Entities submitted several documents to bolster their claims: (1) the letters of medical necessity provided by the referring physicians; (2) "boilerplate examination reports;" and (3) claim forms. Id. ¶ 17. State Farm alleges that the letters of medical necessity falsely represented, *inter alia*, that CPT tests can detect and quantify the presence of abnormalities in the nerves or pinched nerve roots to allow early intervention. Id. ¶¶ 74-79. The boilerplate examination reports contained multiple misrepresentations about the medical validity of the tests, detailed in paragraphs 82-99 of the Amended Complaint, and "invariably conclu[d]e that the findings of [the CPT tests] are consistent with a diagnosis of radiculopathy or related sensory nerve dysfunction for virtually every Insured" when in reality CPT tests "cannot reliably confirm or exclude the existence or location of a radiculopathy or related sensory nerve dysfunction." Id. ¶ 99. The medical corporations also submitted claim forms using a procedural code indicating that Drs. Tuncel and Susi performed a different type of diagnostic test and that the doctors performed and interpreted the tests when in fact they were performed by unsupervised technicians and interpreted by a different doctor. The forms exacerbated the seriousness of the insureds' conditions to support the medical necessity of the testing while at the same time failing to indicate that many of the insureds had already undergone more standard diagnostic testing. Id. ¶¶ 100-06.

### B.     Level 2: Fraudulent Licensure

The second part of defendants' scheme involved the payment of kickbacks to management companies that controlled the medical corporations. A provider of medical services in New York is not eligible for reimbursement if he "fails to meet any

4

applicable New York State or local licensing requirement necessary to perform such service in New York . . . ." 11 N.Y.C.R.R. § 65-3.16(a)(12). New York law prohibits persons who are not doctors of medicine or osteopathy from sharing in ownership of medical service corporations. See N.Y. Bus. Corp. Law §§ 1507, 1508. State Farm alleges that the defendants evaded these proscriptions by having medical professionals own the medical corporations in name only when they were in reality secretly owned and controlled by lay persons. The scheme allowed these lay persons "to do indirectly what they [were] forbidden from doing directly, namely employing physicians and other licensed health care professionals, controlling their practices, charging for and deriving an economic benefit from their services, and generating referrals for CPT Tests as a way to obtain kickbacks." Am. Compl. ¶ 12. The "true owners" of the medical corporations, along with the management companies they ran, acted as "gatekeepers" for the healthcare services supplied by the doctors, deciding which diagnostic tests would be ordered and which doctors would perform them in return for kickbacks from the CPT providers. Id. ¶ 13. In other words, the CPT Medical Defendants and the Susi Entities had to "pay to play." Id. ¶ 14. The following groups of lay persons and management companies orchestrated the referrals and kickbacks.

### i.     **Weinstein and the Weinstein Entities**

While Drs. Tuncel and Susi owned the CPT Medical Defendants and the Susi Entities on paper, State Farm alleges that lay person Richard Weinstein conducted the affairs of these corporations through Richard's Medical Management Corp. and Weinstein Healthcare Management, Inc. (the "Weinstein Entities"), his management companies. Id. ¶ 20. Weinstein orchestrated kickback payments from CPT and Susi to

other management companies, including defendants Multi Medical, Michael Dante Management, Inc., and Summit, that controlled the medical corporations that employed the referring physicians in exchange for patient referrals for CPT testing and fraudulent letters of medical necessity. Id. ¶¶ 23-24. Weinstein also, along with Drs. Tuncel and Susi, directed the production of the boilerplate examination reports and claim forms. Id. ¶ 21. In exchange for his efforts, Weinstein siphoned profits from the CPT Medical Defendants and the Susi Entities in the form of "management fees" that these corporations paid to Weinstein for his services. Id. ¶ 22. Weinstein and the Weinstein Entities were paid nearly half of the $12 million in gross receipts received by the CPT Medical Defendants from 1999 to 2004. Id. ¶ 20.

### ii.    **Referring Physician Medical Corporations**[1]

In addition to the fraudulent licensure of the CPT Medical Defendants and the Susi Entities, State Farm also alleges that the medical corporations owned by Drs. Augustyniak and Brutus were fraudulently licensed.

Dr. Augustyniak owned the medical corporation Bronxborough on paper, however, Plaintiff alleges that it was secretly owned and controlled by lay person Zak and others who decided which medical tests would be ordered by Dr. Augustyniak, including the referral of patients for CPT testing to Dr. Tuncel, and directing the preparation of the letters of medical necessity. Id. ¶ 29. Zak paid Dr. Augustyniak through the management company Summit which he used to "siphon profits from . . . [Bronxborough] to himself and others in the guise of 'management fees.'" Id. Zak

---

[1] The Amended Complaint names multiple other medical corporation defendants, doctors, and lay persons who controlled these groups through their management companies, however, for the sake of brevity this opinion only details the activities of the defendants moving this Court for dismissal.

referred Dr. Augustyniak's patients to the CPT Medical Defendants, and in exchange he received kickbacks. Id. ¶¶ 10, 23, 27.

Dr. Brutus owned Brentwood Pain and Rehabilitation Services P.C., ("Brentwood") and Hempstead Pain and Medical Services, P.C. ("Hempstead") on paper when in fact these medical corporations were owned and controlled by lay persons Lee and Curcio who decided which medical tests would be ordered by Dr. Brutus, including the referral of patients for CPT testing by Dr. Tuncel. Id. ¶ 26. Lee and Curcio paid Dr. Brutus through their management companies Michael Dante Management and Multi Medical which they used to "siphon profits" from fraudulently incorporated Brentwood and Hempstead in the form of management fees. Id. Lee and Curcio referred Dr. Brutus's patients to the CPT Medical Defendants, and in exchange kickbacks were received by their management companies from Weinstein Healthcare. Id. ¶¶ 23-25.[2]

---

2 The following chart outlines the relationships amongst the moving defendants:

| | | **Management Companies that Controlled these CPT Test Providers and Referring Physicians** |
| --- | --- | --- |
| **CPT Test Providers Who Submitted Claims to State Farm** | Dr. Tuncel via CPT Medical Services P.C. and Hoss Medical Services, P.C. (the CPT Medical Defendants) | Richard's Medical Management Corp. and Weinstein Healthcare Management, Inc. (the Weinstein Entities) |
| | Dr. Susi via Channel Chiropractic, P.C. and East-Way Chiropractic, P.C. (the Susi Entities) | Richard's Medical Management Corp. and Weinstein Healthcare Management, Inc. (the Weinstein Entities) |
| **Referring Physicians** | Dr. Augustyniak via Bronxborough | Summit (run by Zak) |
| | Dr. Brutus via Brentwood and Hempstead | Michael Dante Management and Multi Medical (run by Lee and Curcio) |
| | Dr. Slamowitz via the Slamowitz Chiropractic Center | |

## C.    Motions to Dismiss

The causes of action that defendants move to dismiss fall into five categories: (1) violations of the substantive RICO statute, 18 U.S.C. § 1962(c) (counts two and five); (2) RICO conspiracy in violation of 18 U.S.C. § 1962(d) (counts three and six); (3) common law fraud (counts four, seven, eight, eleven, and fourteen); (4) unjust enrichment (counts nine, twelve, and fifteen); and (5) a judgment declaring that the medical corporations are not entitled to collect further No-Fault benefits for CPT tests (counts one and ten brought only against the CPT Medical Defendants and the Susi Entities).[3]

### i.    RICO Claims

Defendants Dr. Tuncel, Weinstein, and the Weinstein Entities move to dismiss the second cause of action for violation of the substantive RICO statute, 18 U.S.C. § 1962(c), which alleges that the CPT Medical Defendants are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4) formed by Dr. Tuncel and Weinstein "for the common purpose of facilitating the submission to State Farm and other insurance companies of fraudulent bills for CPT Tests that were not medically necessary." Id. ¶¶ 169-73. It further alleges that Dr. Tuncel, Weinstein, and the Weinstein Entities knowingly conducted or participated in the conduct of the CPT Medical Defendants through a pattern of racketeering activity which consisted of repeated mailings from the CPT Medical Defendants to State Farm of fraudulent bills in

---

3 The CPT Medical Defendants and the Susi Entities ostensibly move to dismiss counts one and ten, however, they failed to brief this issue for the Court. Therefore, the Court will not consider a motion to dismiss those counts at this time. Count one requests that this Court enter a judgment declaring that the CPT Medical Defendants and the Susi Entities are not entitled to any unpaid benefits from State Farm due to the fraudulent submissions they made concerning the medical necessity of the CPT tests. Count ten requests that this Court enter a judgment declaring that the CPT Medical Defendants are not entitled to any unpaid benefits from State Farm due to the fraudulent statements they made concerning the licensing of these medical corporations and their eligibility to receive No-Fault benefits.

violation of the federal mail fraud statute, 18 U.S.C. § 1341. Id. Similarly, defendants Dr. Susi, Weinstein, and the Weinstein Entities move to dismiss the fifth cause of action for violation of the substantive RICO statute alleging that Dr. Susi, Weinstein, and the Weinstein Entities engaged in similar conduct through the Susi Entities that were an association-in-fact enterprise in order to defraud State Farm. Id. ¶¶ 194-199.

All moving defendants request dismissal of the third cause of action for conspiracy to violate the RICO statute. That count alleges that the defendants

> knew of, agreed to and acted in furtherance of the overall objective of the conspiracy by facilitating the submission to State Farm and other insurance companies of fraudulent bills for CPT tests that were not medically necessary and were of no diagnostic value. Specifically, (a) Weinstein secretly owned and controlled CPT Medical and Hoss Medical through the Weinstein Entities solely to profit from medically unnecessary CPT Tests; (b) Dr. Tuncel falsely purported to own and control CPT Medical and Hoss Medical and to render and interpret CPT Tests that he knew were not medically necessary; (c) the Prescribing Doctors knowingly ordered the CPT Tests and signed or authorized their names to be applied to false letters of medical necessity and other referral documents to enable [the CPT Medical Defendants] to collect fraudulent charges for CPT Tests; [and] (d) the True Owners, Medical PCs and Management Companies, knowingly directed the Prescribing Doctors to order unnecessary CPT Tests in return for Kickbacks from Weinstein and the Weinstein Entities.

Id. ¶ 179.

Defendants Dr. Susi, Weinstein, and the Weinstein Entities move to dismiss count six for RICO conspiracy based on the same conduct outlined in count three for their involvement in the scheme to defraud through the submission of bills for CPT tests from the Susi Entities.[4] Id. ¶ 199.

---

[4] The prescribing doctors, the medical corporations at which they worked, the true owners of those corporations, and the management companies named in count six, other than Dr. Susi, Weinstein, and the Weinstein Entities, have not moved to dismiss. Therefore, the discussion will be limited to the allegations against Dr. Susi, Weinstein, and the Weinstein Entities.

### ii.     Fraud and Unjust Enrichment Claims

#### a.  Billing Fraud

Count four describes an action for common law fraud based on the fraudulent submission of claims to State Farm by the CPT Medical Defendants, and names all defendants as participants in the fraud except Dr. Susi and the Susi Entities.  State Farm alleges that the defendants "intentionally and knowingly made false and fraudulent statements of material fact" to it "by submitting, and causing to be submitted" thousands of fraudulent bills for medically unnecessary tests, and that each defendant committed overt acts to further the plan to defraud State Farm.  Id. ¶¶ 181-82.  Count four also references the fraudulent statements of material fact discussed earlier in this opinion, as well as exhibits listing the dates upon which the claims were submitted to State Farm by the CPT Medical Defendants, and the doctors who referred the patients for those tests.  Count seven describes an action for common law fraud based on similar acts committed by Dr. Susi, Weinstein, the Weinstein Entities, and several defendants who have not moved to dismiss, for the fraudulent submission of claims to State Farm by the Susi Entities.  Again, the count references exhibits listing the dates of the submissions and the corresponding doctors that referred the patients for the tests.

#### b.     Licensing Fraud

Counts eight and nine respectively allege that Dr. Tuncel, the CPT Medical Defendants, Weinstein, and the Weinstein Entities "intentionally and knowingly made or caused to be made material, false and fraudulent statements" by submitting claims to State Farm that represented that the CPT Medical Defendants were properly licensed and therefore eligible to receive No-Fault benefits, and that these defendants were

10

unjustly enriched by these fraudulent statements. Id. ¶210.

Counts eleven and twelve respectively allege the same conduct against Dr. Brutus, Brentwood, Hempstead, Lee, Curcio, Michael Dante Management, and Multi Medical (collectively, "the Brentwood Defendants") for the false representations they made concerning the licensing of Brentwood and Hempstead in the submissions they made to State Farm.[5]

Counts fourteen and fifteen respectively allege the same conduct against Dr. Augustyniak, Bronxborough, Zak, and Summit (the "Bronxborough Defendants") for the false representations they made concerning the licensing of Bronxborough in the submissions they made to State Farm.

---

[5] Dr. Brutus has not joined in the Brentwood Defendants' motions to dismiss.

## DISCUSSION

### A.    <u>Standard of Review</u>

On a motion to dismiss, a district court should assess the legal sufficiency of the complaint rather than weigh the evidence that might be presented at trial. <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985). The court must construe all well-pleaded allegations in the light most favorable to the plaintiff and accept the factual allegations as true. <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 249-50 (1989). The complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." <u>Rothman v. Gregor</u>, 220 F.3d 81, 88-89 (2000). The complaint must provide "'plausible grounds' for the allegations with 'enough facts to raise a reasonable expectation that discovery will reveal evidence' to support them." <u>Mazzaro de Abreu v. Bank of Am. Corp.</u>, 525 F. Supp. 2d 381, 386 (S.D.N.Y. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007)).[6] The issue is not "whether a plaintiff is likely ultimately to prevail, 'but whether the claimant is entitled to offer evidence to support the claims.'" <u>Id.</u> (quoting <u>Weisman v. Le Landais</u>, 532 F.2d 308, 311 (2d Cir. 1976)).

### B.    <u>Preemption</u>

The CPT Medical Defendants, Susi Entities, Weinstein, the Weinstein Entities, and Drs. Tuncel, Susi and Slamowitz argue that State Farm's RICO claims are preempted by New York State Insurance Laws, relying on the McCarran-Ferguson Act,

---

6 Defendants argue that the Amended Complaint should be dismissed because the doctors who referred and ordered the CPT tests made a medical determination that the tests were necessary, and because the New York No-Fault laws have not issued any statements regarding the reliability of CPT tests. This is not a proper objection at the pleading stage. The district court must accept all allegations as true, including State Farm's claim that the tests were not medically necessary.

15 U.S.C. §§ 1011-1015, which provides that a state law regulating insurance preempts conflicting federal law. The controlling case on the issue, Humana v. Forsyth, 525 U.S. 299, 303 (1999), holds that a RICO cause of action can "be applied . . . in harmony with [a] [s]tate's [insurance] regulation. When federal law is applied in aid or enhancement of state regulation, and does not frustrate any declared state policy or disturb th[at] [s]tate's administrative regime, the McCarran-Ferguson Act does not bar the federal action." In Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 515-21 (S.D.N.Y. 1997), the district court held that RICO claims are not preempted by the New York State Insurance Laws pursuant to the McCarran-Ferguson Act. Thus, the defendants' motion to dismiss on this ground is denied.

### C.    **The Thirty Day Rule**

The No-Fault laws require an insurer to pay or deny a claim within thirty days of submission for payment. N.Y. Ins. Law § 5106(a) ("Section 5106"); 11 N.Y.C.R.R. § 65-3.8. The Brentwood and Bronxborough Defendants assert that because State Farm paid many of the claims in question and failed to raise fraud as a defense to payment within the statutory thirty day period, it is now precluded from raising fraud affirmatively. Defendants cite numerous cases holding that an insurer waives his right to object to a claim submitted pursuant to the No-Fault laws if it does not timely object. More recent cases in this district, however, have held that the time limitation imposed was not intended to prevent later actions based on a scheme to defraud.

Judge Hurley recently considered this issue. In Allstate v. Valley Physical Med. & Rehabs., P.C., 05 CV 5934 (DRH) (MLO), 2008 U.S. Dist. LEXIS 26180 (E.D.N.Y. Mar. 31, 2008), on motion to reconsider, he vacated his earlier ruling that failure to deny a

claim within thirty days waived any rights an insurer had to bring a later affirmative action for fraud or unjust enrichment. See Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 475 F. Supp. 2d 213, 223-25 (E.D.N.Y. 2007) ("Valley I"). He wrote that Section 5106 "does not preclude an insurer who fails to timely deny a claim from maintaining an affirmative cause of action for fraud (or unjust enrichment) based on allegations of fraudulent billing." Valley, 2008 U.S. Dist. LEXIS 26180, at *10. This ruling was based largely on several other decisions from this district in which State Farm brought similar actions against doctors and medical corporations that submitted allegedly fraudulent claims. See State Farm Mut. Auto. Ins. Co. v. Kalika, 04 CV 4631 (CBA), 2006 U.S. Dist. LEXIS 97454, at *6-7 (E.D.N.Y. Mar. 16, 2006) (Report & Recommendation of Magistrate Judge Pollack adopted by Judge Amon on March 31, 2006); State Farm Mut. Auto. Ins. Co. v. Grafman, 04 CV 2609 (NG), 2007 U.S. Dist. LEXIS 96751, at *39-46 (E.D.N.Y. Mar. 22, 2007). Central to those decisions was the Department of Insurance's ("DOI") opinion, issued on November 29, 2000, specifically addressing this issue. That opinion stated:

> The New York No-Fault reparations law, more specifically through the payment of benefits provisions of N.Y. Ins. Law § 5106 (McKinney 2000), is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any statute or under common law.

This Court defers to the interpretation of the No-Fault laws by the DOI since that agency has "broad power to interpret, clarify, and implement the legislative policy," and the DOI's interpretation "if not irrational or unreasonable, will be upheld in reference to [its] special competence and expertise . . . unless it runs counter to the clear wording of a statutory provision." N.Y. Pub. Interest Research Group, Inc. v. N.Y. State Dep't of

14

Ins., 66 N.Y.2d 444, 448 (1985). The DOI's interpretation of the No-Fault laws logically

ensures that grand scheme fraud may not be perpetrated on insurers without recourse

by those insurers who pay fraudulent claims. As Judge Pollack reasoned,

> [t]he policy of ensuring prompt payment or denial of claims in exchange for a
> reduction in the number of litigation claims filed is not served by allowing
> fraudulent schemes to be perpetrated without recourse to the insurer seeking
> reimbursement for claims wrongly paid as a result of fraud and deceit. Although
> defendants contend that the 30-day rule simply requires that an insurer raise
> such an issue within the 30 day period through a proper denial of the fraudulent
> claim, often the nature of fraud is such that it is not easily discovered within that
> short period of time. Indeed, the New York Legislature, in providing a six year
> statute of limitations for fraud actions, has recognized the difficulty often
> encountered in unearthing a fraudulent scheme.

Kalika, 2006 U.S. Dist. LEXIS 97454, at *15-16. For these reasons, State Farm is not

precluded from bringing an action alleging fraud and unjust enrichment merely because

it did not discover the defendants' alleged fraud within the thirty day claims period.

### D.    Fraudulent Licensure

The Brentwood and Bronxborough Defendants contend that State Farm may not

seek reimbursement from them for claims it paid prior to April 4, 2002 based on the

New York Court of Appeals' holding in State Farm Mut. Auto. Ins. Co. v. Mallela, 4

N.Y.3d 313 (2005).[7] In Mallela, the court answered the following certified question by

the Second Circuit: "whether a medical corporation that was fraudulently incorporated

under N.Y. Business Corporation Law §§ 1507, 1508 and N.Y. Education Law §

6507(4)(c) [is] entitled to be reimbursed by insurers, under New York Insurance Law §§

5101 *et seq.*, and its implementing regulations, for medical services rendered by licensed

---

7 Though the papers submitted by the CPT Medical Defendants, Susi Entities, Weinstein, the Weinstein Entities, and Drs. Tuncel, Susi, and Slamowitz are silent on the application of Mallela to the Amended Complaint, the Court will consider whether the rule there would bar the claims against them as well.

medical practitioners." 4 N.Y.3d at 320 (alteration in original).

While the Court of Appeals held that unlicensed medical corporations are not entitled to reimbursement for post April 4, 2002 services, the state courts have been divided over whether 11 N.Y.C.R.R. § 65-3.16(a)(12) should be given "retroactive effect so as to bar reimbursement to a medical corporation that was fraudulently incorporated . . . ." <u>Metroscan Imaging, P.C. v. Geico Ins. Co.</u>, 823 N.Y.S.2d 818, 819 (Sup. App. Term 2006). However, the focus of disagreement has been over whether insurers are required to pay for claims which are as yet unpaid, submitted by fraudulently licensed medical corporations for services rendered prior to April 4, 2002. <u>See id.</u> at 819-820 (collecting cases). Here, however, State Farm has alleged that it has already paid the claims submitted by the allegedly fraudulently licensed medical corporations. Therefore, the issue in this case is whether <u>Mallela</u> prohibits insurers from recouping reimbursements for claims it paid prior to the effective date of the regulation.

The few courts that have written on this latter topic have unanimously concluded that <u>Mallela</u> prohibits the recovery of fees already paid. These courts explain that, although the regulation codified the common law of New York that compensation should be denied to unlicensed providers of services for which a regulatory license is required, it did not alter the common law that "the lack of a license does not permit recovery of a fee after it has been paid." <u>St. Travelers Ins. Co. v. Nandi</u>, No. 24107/06, 2007 N.Y. Slip op 51154U, at *6 (Sup. Ct., Queens County May 25, 2007). As explained by the court in <u>Metroscan</u>,

> Our reading of *Mallela* is buttressed by the Court of Appeals holding therein that cause of action by an insurance carrier sounding in fraud or unjust enrichment would not lie prior to the effective date of 11 N.Y.C.R.R. 65-3.16 (a) (12). This . . .

comports with the common-law rule, to wit, the lack of a required license will prevent recovery for services rendered, but the lack of a license does not permit recovery of the fee by the payer after it was paid (*see Johnston v. Dahlgren*, 166 N.Y. 354, 59 N.E. 987 [1901]; *Goldman v. Garofalo*, 71 A.D.2d 650, 418 N.Y.S.2d 803 [1979]; *see also* 13 N.Y. Jur.2d, Businesses and Occupations § 68). However, we read *Mallela* as holding that the promulgation of 11 N.Y.C.R.R. 65-3.16 (a) (12) by the Superintendent of Insurance altered the common law prospectively such that an insurance carrier may maintain a cause of action against a fraudulently incorporated medical service corporation to recover assigned first-party no-fault benefits which were paid by the insurer to such medical service corporation after the regulation's effective date (4 N.Y.3d at 322).

823 N.Y.S.2d at 821. Judge Hurley came to the same conclusion in Valley I, relying on Metroscan, as well as the First Department's ruling in Allstate Ins. Co. v. Belt Parkway Imaging, P.C., 33 A.D.3d 407, 408 (1st Dep't 2006), that the Court of Appeals holding regarding the effective date of the regulation was "dispositive" as to whether payments made before that date could be recouped. See Valley I, 475 F. Supp. 2d at 222-23.

A close reading of Mallela, however, may warrant the conclusion that payments already made prior to the effective date of the regulation may be recovered in an appropriate case. The rationale for precluding recovery was clearly articulated more than a hundred years ago in Johnston, et al. v. Dahlgren, 166 N.Y. 354(2001). The plaintiffs there were master plumbers who were not registered as required with the Board of Health of the City of New York and were hired to do certain plumbing work for the defendant. During the course of their work they were instructed to have other work done and they hired and paid mechanics to perform it. When the work was completed, a sum of money was paid the plaintiffs which they applied to their plumbing bill, leaving the other work by masons, carpenters and painters unpaid. The question presented was whether the money was illegally applied by the plaintiffs upon their plumbing bill. The Court held that the plaintiffs "were disabled from compelling payment for work

17

performed by them in violation of the statute, the defendant had the benefit of the work they had performed and having paid for it," the payment could not be revoked. "He [the defendant] might have contested the demand for payment of the plumbing work by reason of the illegality of the contract for its performance, but he did not do so and, therefore, the court will leave the parties as they are." 166 N.Y. at 359.

Not having been licensed, the plumber could not have insisted upon payment for his work, but the defendant having benefited and paid for the work performed the plumber could not be said to have been unjustly enriched and be compelled to return what he had been paid. See also Goldman v. Garofalo, 71 A.D.2d 650 (2d Dep't 1979); Segrete v. Zimmerman, 67 A.D.2d 999 (2d Dep't 1979).

It is important to note that in Mallela, the Court observed, at p. 320, ". . State Farm never alleged that the actual care received by patients was unnecessary or improper. The patients insured by State Farm presumably received appropriate care from a health professional qualified to give that care. State Farm's complaint centers on fraud in the corporate form rather than on the quality of care provided."

Here, State Farm alleges that the care, i.e., tests, received by the patients were unnecessary and therefore they received no benefit from them. Accepting the allegations as true, reimbursement of the monies paid for them is not precluded by the regulation and arguably not precluded by Mallela. To permit, for example, a placebo having no medical or therapeutic value whatsoever to be provided under the guise of medical or therapeutic necessity in alleged accordance with accepted medical practice, conferring no benefit whatsoever on the patient, is to permit the provider of that placebo to be unjustly enriched by the monies paid for it and would be neither good logic nor

18

good law.[8]

## E. **Statute of Limitations**

The CPT Medical Defendants, Susi Entities, Weinstein, the Weinstein Entities, Drs. Tuncel, Susi and Slamowitz, and the Brentwood Defendants argue that Plaintiff's RICO claims are barred by that statute's four-year limitations period. See In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998). Defendants made this same argument in opposing Plaintiff's motion to amend the complaint. At that time this Court ruled that the assertion of that defense was premature because "fact-sensitive questions" remained concerning whether the allegations in the Amended Complaint were timely. State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 150 (2007) (Glasser, J.).

The CPT Medical Defendants, Susi Entities, Weinstein, the Weinstein Entities, Drs. Tuncel, Susi and Slamowitz maintain that the issue is now ripe for adjudication

---

8  Even if the April 4, 2002 date barred Plaintiff from bringing claims to recover under a theory of fraudulent licensure for claims it paid prior to this date, that bar would only affect counts eight, nine, eleven, twelve, fourteen, and fifteen, the claims for fraud and unjust enrichment that are based purely on the defendants' fraudulent licensing scheme. None of the remaining claims being considered on this motion to dismiss would be affected because the Amended Complaint is not premised solely on the defendants' fraudulent licensing scheme. In addition to fraudulent licensure, State Farm alleges that all the defendants participated in a scheme to defraud it by submitting or causing to be submitted letters of medical necessity, claim forms, and examination reports containing fraudulent misrepresentations as to the validity of the CPT tests. The causes of action for "fraud or unjust enrichment" barred by Mallela refer only to fraud perpetrated on insurance carriers by medical corporations holding themselves out to be properly licensed, and the unjust enrichment those corporations received by virtue of that misrepresentation. Nothing in Mallela or the Insurance Laws bars State Farm from proceeding on its theory of fraudulent billing on any of the remaining counts for the time period before April 4, 2002. Indeed, in Valley I, discussed supra, Judge Hurley considered whether Mallela bars recovery for claims paid prior to April 4, 2002 based on theories of fraudulent licensure and fraudulent billing as separate issues. He concluded in that decision that Mallela barred Allstate from recovering claims it paid prior to April 4, 2002, and he held that it also could not recover on the alternative theory of fraudulent billing for claims made prior to April 4, 2002 because those claims would be otherwise precluded by the thirty day rule. The upshot of Judge Hurley's decision to vacate the latter ruling on motion for reconsideration is that reimbursements made prior to April 4, 2002 may be recovered so long as the sole theory of recovery is not fraudulent licensure. See Valley, 2008 U.S. Dist. LEXIS 26180.

because Plaintiff, having asserted in the Amended Complaint that Medicare issued a

national coverage determination that CPT tests are not medically reasonable or

necessary, should have known of defendants' fraud as early as 1999 when Medicare

issued that opinion.  See In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d at 58 (RICO's

limitations period is not triggered until "the plaintiff discovers or should have

discovered the RICO injury.").  Based on this evidence alone, the Court is not persuaded

that it must dismiss Plaintiff's RICO claims against these defendants.  The fact that

Medicare issued a determination that it believed CPT tests were not compensable under

its payment scheme does not bear upon the central issue involved in this action:

whether defendants defrauded Plaintiff.  Issues of reasonable reliance should not be

resolved at this stage.  See Solow v. Conseco Inc., 06 CV 5988 (BSJ), 2008 U.S. Dist.

LEXIS 9234, at *11 n.8 (S.D.N.Y. Jan. 11, 2008) ("[Q]uestions of reasonable reliance

raise issues of fact that often make them unsuitable for determination on a motion to

dismiss." (quote and citation omitted)).  Indeed, whether defendants concealed their

fraud from Plaintiff is a factual issue which would allow this court to toll the statute of

limitations, and discovery has not yet been completed in this action.[9]

---

9  The Brentwood Defendants maintain that State Farm may not circumvent the statute of
limitations by conclusorily asserting that they concealed their fraudulent acts, thereby making it difficult
for State Farm to uncover their role in the scheme. They believe that when the examination reports for
CPT testing were submitted to State Farm it had all the information it needed to detect fraud.  State
Farm's allegations of fraudulent concealment are sufficient at this stage to survive the statute of
limitations defense.  Defendants may revisit this issue on a motion for summary judgment concerning
whether any issues of fact remain concerning whether State Farm should have discovered the fraud earlier
and whether it was justified in relying on the submissions made by the defendants.

## F.    RICO (Counts Two and Five)

The substantive RICO statute, 18 U.S.C. § 1962(c), provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To plead a RICO violation, a plaintiff must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." AIU Ins. Co. v. Olmecs Med. Supply, Inc., 04 CV 2934 (ERK), 2005 U.S. Dist. LEXIS 29666, at *18 (E.D.N.Y. Feb. 22, 2005). He must also prove that he was "injured in his business or property by reason of a violation of section 1962." Id. (quotation omitted).

The second count in the Amended Complaint states a cause of action for a violation of Section 1962(c) against Dr. Tuncel, Weinstein, and the Weinstein Entities for their roles in facilitating the submission of fraudulent claims through the association-in-fact enterprise made up of the CPT Medical Defendants. The fifth cause action states an identical claim against Dr. Susi, Weinstein, and the Weinstein Entities for their roles in facilitating the submission of fraudulent claims through the association-in-fact enterprise made up of the Susi Entities. As to these counts, the defendants argue that Plaintiff has failed to adequately plead: (1) the existence of an enterprise; (2) defendants' participation in the enterprise; (3) the predicate acts underlying the pattern of racketeering activity; (4) proximate cause; and (5) standing.

### i.     Enterprise

Defendants argue that this Court must dismiss counts two and five because "Plaintiff has failed to allege any specific acts and or words that manifest an agreement to commit fraud for the purpose of the 'enterprise.'" Defs. Br. at 11. This argument reflects a misunderstanding of the substantive RICO elements under Section 1962(c). Allegations of agreements need only be pleaded with respect to Section 1962(d). To constitute an enterprise, "an association of individuals . . . must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." AIU Ins. Co., 2005 U.S. Dist. LEXIS 29666, at *20 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004)).

Here, Plaintiff has alleged that the CPT Medical Defendants and the Susi Entities were formed by Drs. Tuncel, Susi, and Weinstein "for the common purpose of facilitating the submission to State Farm and other insurance companies of fraudulent bills for CPT Tests that were not medically necessary." Am. Compl. ¶¶ 169, 189. To accomplish this goal, they conducted the affairs of these medical corporations "through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent bills for CPT tests," and that the submissions contained misrepresentations concerning the medical necessity of the CPT tests and that the medical corporations were properly licensed and therefore eligible to receive No-Fault benefits. Id. ¶¶ 171, 191. Because it is alleged that "defendants shared the common purpose to defraud [P]laintif[] by exploiting the payment formulas of the No-Fault laws, and they worked together to achieve such purposes[,] . . . [P]laintiff['s] allegations of

22

enterprise are adequate." AIU Ins. Co., 2005 U.S. Dist. LEXIS 29666, at *24.

## ii.    Participation

Defendants also complain that State Farm has not alleged an enterprise because it has not explained "how" Weinstein and the Weinstein Entities controlled the medical corporations.  The Court construes their argument to be that Weinstein and the Weinstein Entities did not "participate . . . in the conduct of [the] enterprise's affairs," meaning its "operation or management."  See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).

Pursuant to the Supreme Court's holding in that case, while it is not necessary for a defendant to have primary responsibility over the enterprise's affairs, or even hold a formal position in the enterprise, a plaintiff must still show that the defendant took "some part in directing those affairs."  Id. at 179.  It is "not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise . . . or provide goods and services that ultimately benefit the enterprise;" it is required that the "provision of these services allow[] the defendant to direct the affairs of the enterprise." AIU Ins. Co., 2005 U.S. Dist. LEXIS 29666, at *25 (quoting United States Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 451-52 (S.D.N.Y. 2004)). Particularly compelling here is the fact that the RICO statute "has been repeatedly construed to cover both insiders as well as those peripherally connected to a RICO enterprise, particularly where the 'outsiders' are alleged to have engaged in kickbacks in order to influence the enterprise's decision." In re Sumitomo Copper Litig., 104 F. Supp. 2d 314, 318 (S.D.N.Y. 2000) (quoting Mason Tenders Dist. Council Pension Fund v. Messera, 95 Civ. 9341 (RWS), 1996 U.S. Dist. LEXIS 8929, at *17 (S.D.N.Y. June 25,

1996)).

The Amended Complaint more than adequately complies with <u>Reves</u>. It alleges that Drs. Tuncel and Susi's medical corporations retained the Weinstein Entities to "manage their business," and through these entities Weinstein secretly owned and controlled the medical corporations in order to siphon profits, including those from the submission of fraudulent bills for CPT tests. It goes on to allege that the Weinstein Entities themselves prepared and submitted the fraudulent bills to State Farm on behalf of the medical corporations, and arranged for payment of kickbacks to other medical corporations in order to gain access to patients. These allegations are sufficient to explain how Weinstein participated in the operation or management of the enterprises.

### iii.    **Predicate Acts**

These defendants also complain that the predicate acts of mail fraud are not alleged with the requisite particularity under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), and that Plaintiff's claim of a so-called "scheme to defraud" is not alleged with the requisite specific intent.

To prove mail fraud a plaintiff must allege: (1) the existence of a scheme to defraud involving money or property; (2) the use of the mails or wires in furtherance of the scheme; and (3) a specific intent to defraud, either by devising, participating in, or abetting the scheme. <u>AIU Ins. Co.</u>, 2005 U.S. Dist. LEXIS 29666, at *30. To show that a defendant used the mails in furtherance of a scheme to defraud, he must show: "1) that the defendants caused the mailing or use of the wires, namely that they must have acted with knowledge that the use of the mails will follow in the ordinary conduct of business, or where such use can reasonably be foreseen, even though not actually intended, and 2)

24

that the mailing . . . was for the purpose of executing the scheme or, in other words, incidental to an essential part of the scheme." Id. at *31 (quotation and internal marks omitted).

A violation of the mail fraud statute must satisfy Rule 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." Where there are multiple defendants, the plaintiff must allege facts specifying each defendant's role in the fraud.

State Farm not only described the nature of the fraudulent misrepresentations in the Amended Complaint, but it has more than adequately particularized the fraudulent statements made by all the defendants involved in this action by attaching charts to the Amended Complaint. See Moore v. Painewebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999) (finding RICO allegations of mail fraud to satisfy Rule 9(b) where "[t]he complaint contain[ed] a chart listing twelve different mailings said to contain fraudulent representations, along with the dates of these mailings . . . [and] [t]he persons responsible for the allegedly fraudulent statements are identified . . . ."). The charts indicate the dates upon which Drs. Tuncel and Susi submitted claims to State Farm through the CPT Medical Defendants and the Susi Entities. Other charts provide the dates that these claims were submitted for patients referred by Drs. Augustyniak, Brutus, and Slamowitz. State Farm also attached sample letters of medical necessity endorsed by these doctors and sample examination reports which include the specific misrepresentations submitted to State Farm. Indeed, State Farm went beyond the necessary pleading requirements for RICO in providing these charts, as the allegations

25

of a scheme to defraud and details of that scheme would have sufficed. See, e.g., Giuliano v. Everything Yogurt, Inc., 819 F. Supp. 240, 244 (E.D.N.Y. 1993) ("[T]he complaint need not specify the time, place and content of each mail communication where the nature and mechanics of the underlying scheme is sufficiently detailed, and it is enough to plead the general content of the misrepresentation without stating the exact words used[.]") (quotation marks omitted).

Plaintiff has also adequately pleaded fraudulent intent as to all defendants. A plaintiff "must provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent either by (1) alleging a motive for committing fraud and a clear opportunity for doing so, or (2) where the motive is not apparent, by identifying circumstances indicating conscious behavior by the defendant, though the strength of the allegations must be correspondingly greater." AIU Ins. Co., 2005 U.S. Dist. LEXIS 29666, at *41 (quotation omitted). Here, the motive shared by all defendants was to induce State Farm to pay claims that were otherwise not reimbursable, and for their efforts they received payments, either directly from State Farm, or indirectly as kickbacks disguised as "management fees."

### iv. Proximate Cause

Defendants argue that State Farm's RICO claims fail because it cannot show that the fraudulent scheme was the proximate cause of State Farm's losses. The RICO statute provides that a plaintiff can only bring an action if he is injured "by reason of" a defendant's racketeering activity. 18 U.S.C. § 1964(c). The proximate cause element has a different meaning in the RICO context than it does in the common law context:

At common law, so long as the plaintiff category is foreseeable, there is no

26

requirement that the risk of injury to the plaintiff, and the risk of the harm that actually occurred, were what made the defendant's actions wrongful in the first place. With statutory claims, the issue is, instead, one of statutory intent: was the plaintiff (even though foreseeably injured) in the category the statute meant to protect, and was the harm that occurred (again, even if foreseeable), the "mischief" the statute sought to avoid.

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 284 (2d Cir. 2006) (internal quotation marks and citation omitted). Therefore, proximate cause in RICO actions requires that "there be some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992); see also Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991, 1998 (2006) (the "central question" in analyzing a RICO claim for proximate cause is "whether the alleged violation led directly to the plaintiff's injuries.").

Defendants argue that, because State Farm accounts for losses it suffered in terms of projections that only affect the future premiums of its insureds, it has not suffered any actual damage due to the alleged RICO violations. This argument must be rejected out of hand. The harm here is directly quantifiable – State Farm has alleged that it was harmed when defendants mailed or caused to be mailed fraudulent claims, and State Farm paid those claims relying on the misrepresentations contained therein. Thus, State Farm's financial losses flow directly from the fraudulent scheme, and it is inconsequential that State Farm might be able to recoup some of those losses through an increase in future premiums.

### v. Standing

Defendants also argue that State Farm lacks standing to bring a claim because the real victims of any RICO violations are either the State of New York or the insureds. See

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006); Longmont United Hosp. v. Saint Barnabas Corp., 06 CV 2802 (DMC), 2007 U.S. Dist. LEXIS 48187 (D.N.J. June 22, 2007).

In Anza, the plaintiff, an entrepreneur, sued its competitor, alleging that its practice of selling products free of sales tax and submitting fraudulent sales tax returns to New York State forced the plaintiff to sell its products at a lower price to remain competitive, and that his business suffered losses as a result. The Court determined that New York State, not the plaintiff, was the only victim directly harmed by the competitor's actions. It held that "[t]he cause of [Plaintiff]'s asserted harms is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." Anza, 547 U.S. at 458. In Longmont, two hospitals sued Saint Barnabas Corporation, a not-for-profit New Jersey corporation that provides healthcare services through its subsidiary hospitals, alleging that the subsidiary hospitals artificially inflated charges in order to receive excessive Medicare payments from the federal government, which set off a chain reaction that caused the government to award the plaintiff hospitals lower Medicare reimbursements than they would have otherwise received. Relying on Anza, the District of New Jersey found that the federal government was an intervening party and therefore any loss suffered by the plaintiff hospitals was not a direct consequence of the defendant's actions. It wrote that where "immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims, proximate cause is lacking." Longmont, 2007 U.S. Dist. 48187 LEXIS, at *19.

Longmont's holding is inapposite here.  Neither New York State nor the insureds is an intervening party such that it directly suffered monetary loss as a result of the submission of fraudulent claims.  The insureds assigned their benefits to their providers, who directly submitted the claims for reimbursement to State Farm.  The insureds would not have claims against defendants for reimbursement of the funds that State Farm paid.  Nor would New York State be expected to directly vindicate the rights of its citizens.  It expects that insurance carriers will carry out this task, as expressed by Section 409 of the Insurance Law requiring insurers to create special investigation units to detect fraud and "coordinat[e] with other units of an insurer for the investigation and *initiation of civil actions* based upon information received by or though the special investigation unit." (emphasis added).

## G.    RICO Conspiracy (Counts 3 and 6)

In addition to the substantive elements of a RICO claim, to state a claim under Section 1962(d), a plaintiff must also allege that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." Colony v. Holbrook, Inc. v. Strata, Inc., 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996); Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001).  A plaintiff must also allege that each co-conspirator knew the conspiracy's goals and agreed to facilitate them.  Baish v. Gallina, 246 F.3d 366, 377 (2d Cir. 2003).

### i.    Agreement To Participate in Scheme To Defraud

To the extent that all defendants argue that Counts three and six do not adequately allege an agreement by them to participate in the scheme to defraud State

29

Farm, they are mistaken. State Farm is only required to allege that defendants agreed to commit two predicate acts of mail fraud. State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 150-51 (E.D.N.Y. 2005) (Glasser, J.). It need not plead that all defendants were responsible for the actual mailings, only that they agreed to aid and abet the commission of mail fraud, and it is the agreement that must be pleaded, not that defendants actually committed the acts. Id. at 151 (citing United States v. Rastelli, 870 F.2d 822, 832 (2d Cir. 1989)). State Farm has not only alleged that the defendants agreed to participate in the scheme, but that they had knowledge that the scheme would ultimately result in the mailing of fraudulent bills to State Farm. The details of each co-conspirators role in submitting the fraudulent bills is detailed in paragraphs 177 and 197 of the Amended Complaint.

### ii. Facts Underlying the Conspiracy

The Bronxborough Defendants are incorrect in asserting that State Farm must plead the facts underlying the conspiracy, such as the arrangement of kickback payments, with specificity pursuant to Rule 9(b). Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. Hecht's pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)."). As described above, Plaintiff has sufficiently pleaded the acts of mail fraud. The allegation of kickbacks concerns the underlying motive of defendants to facilitate the fraudulent scheme, and motive need not be alleged with specificity. State Farm Mutual Auto. Ins. Co., 375 F. Supp. 2d at 154. The allegation that kickback payments were provided is sufficient at this stage.

### iii.    Aiding and Abetting

With regards to the argument that count three fails to allege that any of the fraudulent statements were made specifically by the Bronxborough or Brentwood Defendants, or that they actually participated in or agreed to participate in the predicate acts (i.e., the mailing of the bills containing the misrepresentations to State Farm for reimbursement), defendants again demonstrate a misunderstanding of RICO conspiracy law.  In the first instance, the Supreme Court has long recognized that a conspiracy "may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." Salinas v. United States, 522 U.S. 52, 63 (1997).  Therefore, if the "conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." Id. at 64; see also Rastelli, 870 F.2d at 832 ("Case law unequivocally establishes . . . that a defendant may be convicted of a RICO conspiracy violation if he aids and abets the commission of racketeering acts." (citations omitted)).  Moreover, civil liability under RICO does not require that the defendants "personally used the mails or wires or even knew of the specific mailings that were made; it is sufficient that a defendant 'causes' the use of the mails or wires." Breslin v. Realty Dev. Corp. v. Schackner, 397 F. Supp. 2d 390, 399 (E.D.N.Y. 2005) (quotation omitted).

Here, the Amended Complaint alleges that these defendants aided and abetted the overall fraudulent scheme by providing referral documents that claimed that CPT testing was medically necessary.  In referring patients for testing that the doctors and medical facilities knew were not medically necessary, it can reasonably be inferred that defendants knew their acts would lead to the submission of fraudulent bills.  See, e.g.,

AIU Ins. Co., 2005 U.S. Dist. LEXIS 29666, at *28 ("Prescribing Doctors here were also 'key participants' who made 'critical misrepresentations,' 'created false documents' and served as the point of contact with plaintiffs' clients, the Insureds."). In addition, defendants Curcio, Lee, and Zak are alleged to have participated in the scheme by directing the physicians to make these referrals with knowledge that they would result in kickbacks paid to the medical corporations from which they could siphon funds in the form of "management fees." From these acts it can also be inferred that these lay persons expected the referrals to be submitted through the mails as part of the fraudulent scheme.

### iv.    Enterprise

The Bronxborough and Brentwood Defendants also complain that because they did not directly participate in the operation or management of either the Susi Entities or the CPT Medical Defendants that the element of enterprise has not been properly pleaded as to the substantive violation, and thus no conspiracy can be proven. However, count three does not allege that the Bronxborough Defendants or the Brentwood Defendants were members of the enterprise, which is an association-in-fact enterprise made up of the CPT Medical Defendants, the providers of the CPT tests. They are merely named as co-conspirators, and therefore their participation in the fraud need not reach the level required by Reves. See United States v. Sasso, 230 F. Supp. 2d 275, 284-85 (E.D.N.Y. 2001) ("While under RICO's substantive provisions a defendant must have participated, directly or indirectly, in the operation or management of the enterprise to be subject to RICO liability, for purposes of RICO conspiracy under Section 1962(d) no such requirement exists . . . ." (internal citation omitted)). Thus, Plaintiff need not

allege that these defendants were part of the enterprise, only that they conspired to facilitate the acts of the enterprise, which it has done.

The Bronxborough Defendants also argue that the Amended Complaint sets forth a "classic hub-and-spokes conspiracy," in which a common defendant perpetrates multiple frauds, each with the aid of a different co-defendant, and that these individual two-party conspiracies do not satisfy the enterprise element of a RICO claim. See, e.g., N.Y. Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc., No. 97 Civ. 3164 (KTD), 1998 U.S. Dist. LEXIS 15645, at *15-16 (S.D.N.Y. Oct. 6, 1998) (finding that where plaintiffs alleged that 127 fraudulent insurance applications were submitted through one insurance broker on behalf of numerous unrelated insureds, such conduct constituted a series of "discontinuous independent frauds" and therefore could not support either a RICO enterprise or a RICO conspiracy).

The Court rejects this argument, and applies the findings made by the district court in AIU Insurance Co. The complaint in that action was factually similar to the one here in that it alleged a scheme to defraud insurance companies by doctors and sellers of medical equipment who submitted fraudulent charges for unnecessary medical supplies. On motion to dismiss, the court explained that the complaint did not describe a hub-and-spokes conspiracy because, unlike the series of "single two-party conspiracies" involved in N.Y. Auto. Insurance Plan, the plaintiff had alleged "a group of individuals sharing a common purpose to engage in a fraudulent course of conduct, namely to defraud [P]laintiff[] of money by exploiting the payment formulas of the No-Fault Laws . . . [, and] describe[d] in detail each defendant's necessary and symbiotic contribution to the overall scheme." 2005 U.S. Dist. LEXIS 29666, at *22. The same logic applies

33

here because State Farm has alleged that all defendants worked in concert to achieve the goal of perpetrating fraud on it.

### H.    Fraud

As described above, State Farm has more than adequately pleaded the fraud alleged by defendants, both in describing the misrepresentations and attaching exhibits identifying the party that made the misrepresentation and the date of the misrepresentation. Therefore, this Court denies defendants' motions to dismiss the fraud claims.

### I.    Unjust Enrichment

Under New York law, to make out a claim for unjust enrichment, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." State Farm Mutual Auto. Ins. Co., 375 F. Supp. 2d at 154.

The Bronxborough Defendants argue that count fifteen does not allege a direct relationship or a substantive connection between them and State Farm such that they were directly enriched at State Farm's expense. However, this Court has already ruled on this issue with respect to other defendants in this case charged with similar conduct, finding that while "there is no explicit allegation stating that defendants received some portion of the more than $2,500,000 paid by plaintiff to, among others, Tuncel and [the medical corporation defendants], it is reasonable to infer that defendants benefitted from the scheme described in the complaint." Id. Therefore, this Court denies the motion to dismiss count fifteen.

# CONCLUSION

For the foregoing reasons, this Court denies defendants' motions to dismiss.

SO ORDERED.

Dated:      Brooklyn, New York
             September 3, 2008

_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Plaintiff:

Jay Shapiro, Esq.
Ross O. Silverman, Esq.
Alexis Lauren Cirel, Esq.
Jonathan L. Marks, Esq.
Cara A. Roecker, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022

Counsel for Drs. Tuncel, Susi, Slamowitz, the CPT Medical Defendants, the Susi Entities, Weinstein and the Weinstein Entities:

Bruce S. Rosenberg. Esq.
Rosenberg Law, P.C.
2631 Merrick Road, Suite 401
Bellmore, New York 11710

Counsel for the Bronxborough Defendants:

Matthew J. Conroy, Esq.
Matthew J. Conroy & Associates, P.C.
350 Old Country Road, Suite 106
Garden City, New York 11530

<u>Counsel for the Brentwood Defendants</u>:

Lawrence A. Kushnick, Esq.
Kushnick & Associates, P.C.
445 Broad Hollow Road, Suite 124
Melville, New York 11747